UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AARON MILES,

    *Plaintiff*,

v.

CITY OF JERSEY CITY, et al.,

    *Defendants*.

Civil Action No. 14-5492 (JMV)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This case arises from the events surrounding Plaintiff's arrest and indictment, followed by a dismissal of the charges. Plaintiff Aaron Miles ("Plaintiff") sued Defendants City of Jersey City ("Jersey City"); City of Jersey City Police Department ("Jersey City PD"); Jersey City Police Officers Mark Hennessey, Michael Meade, Michael Strothers, and Christopher Dalton; Jersey City Police Detective Corey Parsons; Nicole Tengo; ABC Corp. 1-3; and John Doe 1-3. Pending before the Court is a motion for summary judgment filed by Defendants Jersey City; JCPD; JCPD Officers Hennessey, Meade, Strothers, Dalton; and JCPD Detective Parsons (collectively "Defendants"). D.E. 34.[1] Plaintiff did not submit any opposition. The Court reviewed all submissions and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motion for summary judgment is **GRANTED**.

---

[1] In this Opinion, Defendants' motion for summary judgment (D.E. 34) will be referred to as "Def. Brf."

I.  **FACTS AND PROCEDURAL HISTORY**

   **A. Factual Background**

   Plaintiff is an African-American man and a New Jersey resident. Complaint ("Compl.") ¶ 5. Around 9:20 p.m. on September 11, 2015, Officers Strothers and Dalton were dispatched to Claremont Avenue and Westside Avenue in Jersey City on report of a robbery. Defendants' Statement of Material Facts Not in Dispute ("DSOMF") ¶ 1; D.E. 34. Upon arrival, Strothers and Dalton spoke to the alleged victim (and co-Defendant) Nicole Tengo. *Id.* ¶ 2. Ms. Tengo stated that she had just been robbed and gave a description of the man who robbed her as well as of the electronic device taken. *Id.* ¶¶ 2,7. Specifically, Ms. Tengo described her attacker as a black man in his early-twenties, wearing an olive-green shirt and black pants. She also stated that he had a short afro-style haircut. *Id.* ¶ 3. Officer Dalton then notified the chain of command and pertinent facts were broadcast over the police radio. *Id.* ¶ 4. Detective Parsons was dispatched to the scene and spoke with Ms. Tengo. Based on their conversation, Detective Parsons concluded that Ms. Tengo had been robbed. *Id.* ¶ 7. Around 9:27 p.m. that same day, Officers Meade and Hennessey stopped Plaintiff in front of 66 Williams Avenue because he fit Ms. Tengo's description of her assailant. *Id.* ¶ 8. 66 Williams Avenue was a few blocks away from where Ms. Tengo alleged she was robbed. *Id.* ¶ 7.

   At his deposition, Plaintiff testified that before the police encounter he had been sitting on the porch of 66 Williams Avenue. *Id.* ¶ 10; Certification of Stevie Chambers ("Chambers Cert."), Deposition of Aaron Miles ("Miles Depo.") at 19:22; D.E. 34-2. Further, Plaintiff stated that around 9:30 p.m., two Caucasian police officers had arrived at 66 Williams Avenue and asked him to stand up and come down the porch. DSOMF ¶ 10; Miles Depo. at 19:18-25. After Plaintiff did

2

so, the police officers held his forearms and patted him down. DSOMF ¶ 10; Miles Depo. at 20:1-16.

At 9:46 p.m., Detective Parsons drove Ms. Tengo to 66 Williams Avenue for a show-up identification procedure. Chambers Cert., Ex. J., Parsons Show-up Identification Procedure Worksheet. Detective Parsons told Ms. Tengo that police officers had stopped a male fitting the description of her assailant and that they would like her to view him. *Id.* Detective Parsons advised Ms. Tengo that she should not feel compelled to make an identification. *Id.* Upon arriving at 66 Williams Avenue, Ms. Tengo affirmatively stated that Plaintiff was her assailant. *Id.* Detective Parsons testified that Plaintiff's appearance matched Ms. Tengo's earlier description of her assailant. Chambers Cert., Ex. D, Corey Parsons Interrogatory Answers at 2. Plaintiff testified that he was then handcuffed and put in the back of a police car. Miles Depo. at 34:24-25. He further stated that the handcuffs were put on tight enough to leave marks—although the marks were not permanent and did not require medical attention. *Id.* at 36: 1-10.

On December 4, 2012, a Grand Jury indicted Plaintiff for robbery in the second degree. Chambers Cert., Ex. K, Aaron Miles Grand Jury Indictment. On November 15, 2013, the State dismissed the indictment against Plaintiff. Chambers Cert., Ex. L, Aaron Miles Judgment of Dismissal.

**B. Procedural Background**

Plaintiff filed his Complaint on September 2, 2014. D.E. 1. At the time, Plaintiff was represented by counsel, but Plaintiff is now proceeding *pro se*. D.E. 30, 32. The allegations in the Complaint are somewhat unclear. The Complaint sets forth eight counts that appear to allege excessive force pursuant to 42 U.S.C. § 1983 against the JCPD officers (Count One); supervisory liability based on failure to train pursuant to Section 1983 against Jersey City and the JCPD

3

(Counts Two, Three, Four); false arrest and false imprisonment pursuant to Section 1983 and the New Jersey Civil Rights Act against the JCPD officers (Count Five); common law assault and battery against the JCPD officers (Count Six); unspecified violations of the New Jersey Constitution (Count Seven); and conspiracy for neglecting to prevent the civil rights conspiracy pursuant to 42 U.S.C. § 1986 (Count Eight).

On November 18, 2014, Defendants submitted their Answer and filed crossclaims for contribution and indemnification. D.E. 6. On November 23, 2016, the case was reassigned to the undersigned. D.E. 18. Then, on June 9, 2017, Defendants made the current motion for summary judgment. D.E. 34.

## II.  SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). In other words, a court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

Even though Plaintiff failed to oppose Defendant's motion, the Third Circuit has cautioned:

> [T]he movant for summary judgment has the burden of demonstrating the absence of genuine issues of material fact . . . and even if the opposing party fails to file contravening affidavits or other evidence, summary judgment must still be 'appropriate' and will be denied where the movant's own papers demonstrate the existence of material factual issues.

*Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 790 (3d Cir. 1978) (internal citations omitted).

## III. LEGAL ANALYSIS

Defendants move for summary judgment on multiple grounds. In addition to arguing that Plaintiff has not alleged facts or produced evidence to create genuine issues of material fact as to his claims, Defendants also claim that they are entitled to qualified immunity.

### a. Section 1983 Claims (Counts One, Two, Three, Four, Five)

Plaintiff brings Counts One, Two, Three, Four, and Five pursuant to Section 1983. Count Five is also brought pursuant to the New Jersey Civil Rights Act ("NJCRA"). 42 U.S.C. § 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a claim under Section 1983, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

The NJCRA provides a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person

6

>acting under color of law, may bring a civil action for damages and
>for injunctive or other appropriate relief.

N.J.S.A. 10:6-2. The "NJCRA was modeled after § 1983, [and so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez v. Fuentes*, No. No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotations and citation omitted); *see, e.g.*, *Waselik v. Twp. of Sparta*, No. 16-4969, 2017 WL 2213148, at *8 n.15 (D.N.J. May 18, 2017) (noting that the court had "not seen in the case law any indication that malicious prosecution is an exception to the general principle that NJCRA is construed in parallel to § 1983."). Therefore, the Court considers Plaintiff's Section 1983 and NJCRA claims together.

Qualified immunity can shield a municipal officer from liability in a Section 1983 case. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). "Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Paszkowski v. Roxbury Twp. Police Dep't*, No. 13-7088, 2014 WL 346548, at *2 (D.N.J. Jan. 30, 2014). A court must engage in a two-part inquiry to determine whether qualified immunity applies: (1) whether the allegations, taken in the light most favorable to the party asserting the injury, show that defendant's conduct violated a constitutional right, and (2) whether the constitutional right at issue was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Courts have the discretion to consider either prong of the two-part analysis first. *Id.* at 236. The United States Supreme Court has ruled that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "To make that determination, [a court should] engage in another

7

reasonableness inquiry: 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Santini v. Fuentes*, 795 F.3d 410, 417-18 (3d Cir. 2015) (quoting *Saucier*, 533 U.S. at 202). This analysis is "undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201.

"The issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). In deciding qualified immunity questions at summary judgment, a court must view the facts in the light most favorable to the plaintiff. *Id.*; *see Scott v. Harris*, 550 U.S. 372, 378 (2007) (finding that when the parties' versions of the facts differ substantially at summary judgment, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion," and therefore, in "qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts.") (internal quotations, citations, and brackets omitted). Summary judgment may be granted to officers if, when interpreting the facts in the light most favorable to the plaintiff, the court determines that the facts do not support a violation of a clearly established constitutional right. *Mitchell v. Forsyth*, 472 U.S. 511, 546 (1985) (stating that "when a trial court renders a qualified immunity decision on a summary judgment motion, it must make a legal determination very similar to the legal determination it must make on a summary judgment motion on the merits"); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *Scott*, 550 U.S. at 378.

Qualified immunity under New Jersey law "tracks the federal standard." *Brown v. State*, 230 N.J. 84, 98 (N.J. 2017) ("To ascertain whether a governmental official . . . is entitled to qualified immunity requires inquiries into whether: (1) the facts, taken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a constitutional right; and

8

(2) that constitutional right was clearly established at the time that defendant acted.") (quotations, citations, and brackets omitted). The qualified immunity defense "extends to suits brought under . . . the [NJCRA]." *Id.* Accordingly, the Court considers qualified immunity under federal and state law together.

### 1. Supervisory Liability (*Monell* Liability) (Counts Two, Three, Four)

In Counts Two, Three, and Four of his Complaint, Plaintiff seeks to hold Jersey City and the JCPD liable for failing to properly train and supervise its police officers. Defendants first assert that the JCPD should be dismissed from the suit because a municipal police department is not an entity subject to suit. Def. Brf. at 18 (citing *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 181 (3d Cir. 2013)). Defendants next argue that summary judgment should be granted on Counts Two, Three, and Four because Plaintiff has not put forward any evidence that he suffered a constitutional violation as a result of a Jersey City custom, policy, or practice. Def. Brf. at 16-18.

The Court agrees that the JCPD is not a proper party to this matter. *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (finding that in "Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity") (internal quotation omitted); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("[W]e treat the municipality and its police department as a single entity for purposes of section 1983 liability."); *Castoran v. Pollak*, No. CV 14-2531, 2017 WL 4805202, at *7 (D.N.J. Oct. 25, 2017) (finding in a Section 1983, NJCRA, and TCA action that "[b]ecause the [Northfield Police] Department is not an entity separate from the municipality it cannot be sued in conjunction with the municipality, irrespective of the nature of the plaintiff's claims") (internal quotation omitted); *Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (finding that "[i]n New Jersey

9

a municipal police department is not an entity separate from the municipality; therefore, the Camden Police Department is not a proper defendant in this action") (internal citation omitted). Consequently, the claims against the JCPD are dismissed with prejudice.

Further, while a municipality may be liable under Section 1983, it cannot be held liable under a theory of *respondeat superior*. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). "A municipality may only be held liable under Section 1983 if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Twp.*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell*, 436 U.S. at 694). "In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that caused the violation." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (internal citation omitted). "A plaintiff may show the existence of a *policy* when a decision-maker with final authority issues an official proclamation, policy, or edict." *Id.* (emphasis added) (internal quotations and citations omitted). "[A] *custom* may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (emphasis added) (internal quotations and citations omitted).

Concerning appropriate training, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* "'Deliberate indifference' is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . *Ordinarily, a*

*pattern of similar constitutional violations by untrained employees is necessary* to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (emphasis added) (internal quotations, citations, and brackets omitted).[2]

Additionally, a plaintiff must show that the unlawful policy or custom was the proximate cause of the plaintiff's injuries. The United States Supreme Court has observed the following as to proximate cause:

> As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *see also Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). A police department may have an otherwise adequate policy or practice, or an otherwise sufficient training program, but may nevertheless still fall constitutionally short if it fails to recognize the deficiencies of a particular officer. As noted, the department or its superiors are generally charged with notice of an individual officer's shortcomings based on the officer's "pattern of similar constitutional violations[.]" *Thomas*, 749 F.3d at 223.

---

[2] "[I]n certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (internal quotations omitted) (citing *Canton*, 489 U.S. at 390 n.10). These "single-incident" failure to train cases are, however, rare. "Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Thomas*, 749 F.3d at 223-24 (internal quotation, citation, and bracket omitted). Here, Plaintiff has not argued the "single-incident" theory of liability.

11

Here, Plaintiff has not proffered evidence about an alleged policy or custom that contributed to his false arrest or any other constitutional violation. There is no evidence supporting Plaintiff's allegations.

As a result, Defendants' motion for summary judgment is granted as to Counts Two, Three, and Four.

### 2. *Excessive Force (Count One)*

Defendants argue that summary judgment should be granted as to Plaintiff's excessive force claim because the record demonstrates that any force used against Plaintiff was reasonable in relation to the circumstances. Def. Brf. at 5-8. The Court agrees.

"The Fourth Amendment, which protects persons from 'unreasonable searches and seizures' prohibits false arrest, false imprisonment, illegal search and seizure, and the use of excessive force.'" *Roman v. City of Newark*, No. 16-1110, 2017 WL 436251, at *3 (D.N.J. Jan. 31, 2017) (quoting U.S. Const. amend. IV). When a police officer uses force to effectuate an arrest, that force must be objectively reasonable. *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of the force used is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Groman,* 47 F.3d at 634 (quoting *Graham*, 490 U.S. at 396). Further, when more than one officer is sued on a Fourth Amendment excessive force claim, the district court must evaluate each officer's liability separately. *Bishop v. Hackel*, 636 F.3D 757, 767 (6th Cir. 2011).

Here, Plaintiff's allegations of force concern only the two officers who arrested him. Plaintiff does not allege that any other officers used force against him. As to the arresting officers,

Plaintiff testified that on the night of his arrest two Caucasian officers arrived at 66 Williams Avenue, asked him to stand up and come forward, and then held his forearms while patting him down. These officers later put handcuffs tightly on Plaintiff's wrists. Defendants admit the officers involved with Plaintiff's arrest were Officers Meade and Hennessey.

Such force was reasonable. Officers Meade and Hennessey responded to radio information about a robbery suspect. Upon arriving at 66 Williams Avenue, they asked Plaintiff to approach and then held his forearms while they patted him down for weapons. Plaintiff does not claim to have suffered pain or injury from this pat down. Later after receiving a positive identification from Ms. Tengo, the officers handcuffed Plaintiff. While Plaintiff complains that the handcuffs were tight, the handcuffs' tightness did not require Plaintiff to receive medical attention nor did they leave a permanent mark. Discomfort from tight handcuffs alone is insufficient to rise to a Fourth Amendment violation. *Compare Bradley v. Jersey City Police Dep't*, No. CIV.A. 12-5236, 2013 WL 4606710, at *5 (D.N.J. Aug. 29, 2013) (finding that "[i]n the absence of a fuller factual description, and where the only harm Plaintiff is alleged to have suffered is the discomfort of tight handcuffs, Plaintiff's conclusory characterization of the officers' use of force as excessive is insufficient[.]") *with Kopec v. Tate,* 361 F.3d 772, 774 (3d Cir. 2004) (denying the officer qualified immunity for his use of excessive force against the plaintiff who suffered permeant nerve damage requiring surgery from the tightness of the handcuffs the officer had placed on him).

Thus, there is no genuine issue of material fact over the reasonableness of the force Officers Meade and Hennessey used against Plaintiff. Accordingly, there is no constitutional violation. It follows that Defendants are entitled to qualified immunity and are granted summary judgment as to Count One.

### 3. *False Arrest & False Imprisonment (Count Five)*

Although Plaintiff does not refer to the NJCRA in his Complaint, he appears to be asserting his claims of false arrest and false imprisonment pursuant to both Section 1983 and the NJCRA. *See* Compl. ¶ 58.

False arrest and false imprisonment are very similar and are often considered together. To state a claim for false arrest under federal or New Jersey law, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause. *See James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (describing false arrest under the Fourth Amendment); *Schirmer v. Penkethman*, No. CIV. 10-1444, 2012 WL 6738757, at *8 (D.N.J. Dec. 31, 2012) (citations omitted) (describing false arrest under New Jersey law), *aff'd*, 553 F. App'x 268 (3d Cir. 2014). "The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman*, 47 F.3d at 634 (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)); *Nanton v. Mecka*, No. 11-6132, 2013 WL 1844756, at *6 (D.N.J. Apr. 30, 2013) ("The validity of an arrest does not depend on the ultimate finding of guilt or innocence following an arrest.").

In addition, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *O'Connor v. City of Philadelphia*, 233 F. App'x 161, 164 (3d Cir. 2007) (citations omitted); *see Reedy v. Twp. of Cranberry*, No. 06-1080, 2007 WL 2318084, at *3 (W.D. Pa. Aug. 9, 2007) ("The basis for false arrest is the arrest itself, whereas the basis for false imprisonment is the detention that follows the false arrest."). Under New Jersey law, "[t]he tort of false imprisonment has two elements: (1) an arrest or detention of the person against his or her will and (2) lack of proper legal

authority or legal justification." *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591 (N.J. 2009) (quotations omitted). In other words, in New Jersey, "[f]alse imprisonment is the constraint of the person without legal justification." *Id.*

Defendants argue that no genuine issues of material fact exist as to whether the officers had probable cause to arrest and detain Plaintiff because Ms. Tengo's positive identification of Plaintiff gave the officers probable cause to arrest him. Def. Brf. at 9. Defendants highlight that Plaintiff does not contest either that the show-up procedure used was improper or that Ms. Tengo was unduly influenced to identify Plaintiff. *Id.*

The Court agrees with Defendants. Courts deciding whether to credit a positive identification as a basis for probable cause look to the reliability of the identification. "Reliability is determined by considering whether 'under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive.'" *Stackhouse v. City of E. Orange*, No. CIV.A. 07-05502, 2012 WL 359727, at *5 (D.N.J. Feb. 1, 2012) (*quoting Neil v. Biggers*, 409 U.S. 118, 200 (1972)). Courts assessing the totality of the circumstances look to the following factors: (1) whether the witness was able to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the suspect; (4) the level of certainty demonstrated by the witness at the time of the identification; (5) the length of time between the crime and identification. *Id.* Further, courts within this district have found that a properly conducted show-up identification can provide reliable identification. *Green v. City of Paterson*, 971 F. Supp. 891, 904 (D.N.J. 1997) ("A "show-up" identification allows identification before the suspect has altered his appearance and while the witness' memory is fresh and permits the quick release of innocent persons.") (internal quotation omitted).

Here, Officers Strothers and Dalton spoke with Ms. Tengo, the alleged victim of a robbery, at 9:20 p.m. Ms. Tengo provided the officers with a description of her assailant. She described her attacker as a black man in his early-twenties, wearing an olive-green shirt and black pants. She also stated that he had a short afro-style haircut. Approximately seven minutes later, just blocks away from the crime scene, Officers Meade and Hennessey detained Plaintiff because he fit Ms. Tengo's description. Detective Parsons then brought Ms. Tengo to the location where Plaintiff was being detained. He advised Ms. Tengo that she should not feel compelled to make an identification. Ms. Tengo saw Plaintiff and affirmatively identified Plaintiff as her assailant.

These facts do not raise material disputes as to the reliability of the officers' show-up procedure. Ms. Tengo was able to view her assailant, she provided a reasonably-detailed description of his appearance, her description matched Plaintiff, Plaintiff was found close to the scene of the robbery, Ms. Tengo identified Plaintiff within thirty minutes of the robbery, and Detective Parsons informed her that she should not feel pressured to make an identification. Plaintiff does not proffer evidencing challenging these facts. Thus, the show-up procedure was reliable. Moreover, thereafter, a grand jury indicted Plaintiff for second degree robbery. *Camiolo v. State Farm Fire & Cas. Co.,* 334 F.3d 345, 363 (3d Cir. 2003) (noting that "a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute") (quoting *Rose v. Bartle,* 871 F.2d 331, 353 (3d Cir.1989).

Thus, the Court finds that there is no genuine issue of material fact over whether Defendants had probable cause to arrest and detain Plaintiff. Accordingly, there is no constitutional violation. It follows that Defendants are entitled to qualified immunity and are granted summary judgment as to Count Five.

### b. New Jersey Constitutional Violation (Count Seven)

In addition to alleging constitutional violations of false arrest, false imprisonment, and excessive force, Plaintiff also alleges that his rights under New Jersey's Constitution were violated. Compl. ¶¶ 73-76. Plaintiff does not delineate which provision of the New Jersey Constitution was allegedly violated. To the extent he is reiterating his claims pursuant to the NJCRA, the Court has already granted summary judgment for the reasons stated above. Otherwise, because Plaintiff fails to indicate any other alleged violation of the New Jersey Constitution, Defendants are granted summary judgment on this count.

### c. New Jersey Common Law Assault & Battery (Count Six)

Additionally, Defendants argue that that they are entitled to summary judgment on Plaintiff's state common law claim for assault and battery. Def. Brf. at 4-5. The Court agrees.

As a threshold matter, a party that asserts a tort claim seeking damages from a public entity or public employee must comply with the New Jersey Tort Claims Act ("TCA"), which "establishes the procedures by which [such] claims may be brought." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 N.J. 130, 146 (2013) (quoting *Beauchamp v. Amedio*, 164 N.J. 111, 116 (2000)). One requirement is "that a timely pre-suit notification about the existence of the claim and its particulars be provided to the defendants." *Id.* N.J.S.A. 59:8-8 requires that within ninety days of the claim's accrual, an individual file a "notice of claim" with the entity involved in the alleged wrongful act or the New Jersey Attorney General. If not, "[t]he claimant shall be forever barred from recovering against a public entity or public employee if . . . [t]he claimant failed to file with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.A. 59:8-9."

N.J.S.A. 59:8-9 provides that within one year of a claim's accrual, a judge may allow a claimant to file a late notice of claim if doing so would not cause substantial prejudice to the defendant and if the untimeliness was due to "extraordinary circumstances." However, after two years have elapsed from the accrual of the claim, a plaintiff is "forever barred" from recovering against the public entity or employee. N.J.S.A. 59:8-8(b). These timing requirements are strictly construed, and a plaintiff who fails to comply is barred from recovering on his claims. *Niblack v. SCO Malbreen*, No. 15-5298, 2016 WL 1628881, at *3 (D.N.J. Apr. 25, 2016). In fact, "[f]ailure to file a notice of claim is a ground for dismissal at the motion to dismiss stage." *Id.* (citing *William v. Westampton Police Dep't*, No. L-1144-13, 2014 WL 5393184, at *3 (N.J. App. Div. Oct. 24, 2014)); *see also Ingram v. Twp. of Deptford*, 858 F. Supp. 2d 386, 400 (D.N.J. 2012).

Here, Plaintiff neither alleges nor provides any proof that he filed a notice of claim within ninety days of the accrual of his claims or anytime thereafter. As a result, there is no genuine issue of material fact, and Defendants' motion for summary judgment is granted as to Count Six.

### d. Failure to Prevent a Civil Rights Conspiracy (Count Eight)

Finally, without factual support, Plaintiff alleges that Defendants violated 42. U.S.C. § 1986. Compl. ¶¶ 77-78. Defendants argue that they are entitled to summary judgment on this claim as Plaintiff has not alleged or put forward evidence to support the claim. Def. Brf. at 15. The Court agrees.

Section 1986 works in conjunction with 42. U.S.C. § 1985. A plaintiff may bring a Section 1985 claim if he has been harmed by a "conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d

Cir. 2006) (quoting 42 U.S.C. § 1985(3)). A plaintiff must prove the following to sustain a Section 1985 claim:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Id.* (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)).

Section 1986 "is a companion to s[ection] 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of s[section] 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980). In order to state a Section 1986 cause of action, the plaintiff must first demonstrate "the existence of a § 1985 conspiracy. Any issue of material fact in a § 1986 action presupposes and relates to a § 1985 conspiracy. Thus, if the elements of the § 1985 conspiracy are missing, a § 1986 cause of action is properly dismissed on summary judgment." *Clark v. Clabaugh*, 20 F.3d 1290, 1296 (3d Cir. 1994).

Here, Plaintiff does not allege a Section 1985 claim. And neither the factual allegations in the Complaint nor the evidence in Defendant's summary judgment motion support inferring a civil rights conspiracy. Because Plaintiff does not allege a Section 1985 claim, no genuine issues of material fact exist as to whether Plaintiff has a Section 1986 claim.

Therefore, Defendants' summary judgment motion is granted as to Count Eight.

### e. Remaining Unidentified Defendants

The Court also dismisses Defendants ABC Corp. 1-3 and John Doe 1-3 from this matter. Federal Rule of Civil Procedure 21 "provides that on motion or on its own, the court may at any time, on just terms, add or drop a party." *Blakeslee v. Clinton Cty.*, 336 F. App'x 248, 250 (3d

Cir. 2009) (quoting Fed. R. Civ. P. 21.). A plaintiff may name John Doe defendants "until reasonable discovery permits the true defendants to be identified." *Blakeslee*, 336 F. App'x at 250. "If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." *Id. See Adams v. City of Camden*, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (eliminating fictitious defendants from the action under Rule 21 because after "a year of discovery and motion practice, Plaintiff has failed to identify these defendants or provide any evidence of their liability for the claims raised in the Complaint."). Here, discovery was commenced over three years ago, *see* D.E. 8, and Plaintiff still has not identified the fictitious defendants or provided evidence as to how they were involved in this matter. Therefore, pursuant to Rule 21, Defendants ABC Corp. 1-3 and John Doe 1-3 are dismissed with prejudice from this matter.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment (D.E. 34) is **GRANTED** on all counts. In addition, Defendants ABC Corp. 1-3 and Defendants John Doe 1-3 are dismissed with prejudice from this matter. An appropriate Order accompanies this Opinion.

Date: August 22, 2018

*[signature]*
John Michael Vazquez, U.S.D.J.